```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------

GREGG LERMAN, ROBERT DEPALO, AND
ROSEMARIE DEPALO,
                                         13 Misc. 050 (JGK)
                    Movants,             13 Misc. 051 (JGK)
                                         13 Misc. 052 (JGK)
        - against -
                                         OPINION AND ORDER
UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

                    Respondent.
------------------------------------
```

**JOHN G. KOELTL, District Judge:**

Gregg Lerman (12 Misc. 50), Robert DePalo (12 Misc. 51), and Rosemarie DePalo (12 Misc. 52) (collectively "the Movants"), seek an order preventing the United States Securities and Exchange Commission ("the SEC" or "the Commission") from obtaining access to their financial records from Citibank, N.A., ("Citibank" or "the Bank") and quashing the Commission's administrative subpoenas requiring the production of those records under Section 1110 of the Right to Financial Privacy Act of 1978 ("RFPA"), 12 U.S.C. § 3410.  For the reasons provided below, the motions of Robert DePalo and Gregg Lerman are **denied**, and the motion of Rosemarie DePalo is **granted without prejudice** to the SEC's redrafting the subpoena or submitting further evidence in support of its enforcement.

1

**I.**

The background of the ongoing SEC investigation and litigation involving the Movants was set out in detail in this Court's prior Bench Opinion in SEC v. DePalo. (See Hr'g Tr., SEC v. DePalo, 12 Misc. 0377 (S.D.N.Y. Feb. 19, 2013) ("Tr.") at 29-50). The facts will only be detailed as necessary for the current motions.

Arjent LLC ("Arjent") is a broker-dealer based in Manhattan that is registered with the SEC. (SEC Verified Mem. Opp. ("SEC Mem.") at 2.) Pangaea Trading Partners, LLC ("Pangaea") is alleged to be a holding company with respect to ownership interests in broker dealers and other companies involved in financial markets in the United States and overseas. (Tr. 30.) Robert DePalo is the chairman, managing member and chief executive officer of Arjent, and also allegedly plays a key role in operating Pangaea. (Tr. 30.) Rosemarie DePalo is his spouse. (Rosemarie DePalo Aff. ¶ 4.) SPK is allegedly a holding company for a broker-dealer firm and has passive holdings in other companies. (Tr. 30.) Gregg Lerman is a principal of SPK and also has been registered as an associated person of Arjent. (SEC Mem. at 3; Tr. 30.)

On September 7, 2012, the SEC issued an amended formal order of investigation concerning Arjent (the "Amended FOI").

The Amended FOI included Pangaea, SPK, and Robert DePalo as parties that the SEC had information tending to show had violated Section 17(a) of the Securities Act of 1933 and Section 10(b) of the Securities Exchange Act of 1934.  (SEC Mem. at 2; Tr. 31-32.)  Based on information gathered through the continuing investigation into Arjent, the SEC allegedly has evidence that Robert DePalo and Gregg Lerman misappropriated some of the proceeds invested in Pangaea and SPK.  (Tr. 32-33.)  The SEC alleges that some funds from Arjent customers were transferred to Pangaea, then transferred to Robert DePalo's personal bank account, which he then transferred to his wife, other Arjent associates, and other businesses he owned.  (Tr. 33.)  The SEC also alleges that other funds from Arjent customers were transferred through other entities to DePalo and Lerman.  (Tr. 33.)  Robert DePalo does not dispute that Pangaea funds were routed to Arjent UK through his personal account and that he retained a portion of the funds.  (Tr. 32.)

On or about February 8 and 11, 2013, the SEC issued three subpoenas to Citibank for records relating to accounts Citibank held in the names of Robert DePalo, Rosemarie DePalo, and Gregg Lerman.  The SEC simultaneously notified the Movants and their attorney that the subpoenas had been issued and provided instructions for contesting the subpoenas.  On February 15,

2013, the Movants brought separate motions to quash the SEC subpoenas.  On March 1, 2013, the SEC responded to the motions to quash.  On March 7, 2013, the Movants filed a reply.  The motions are now fully briefed.

**II.**

"The RFPA is the only means by which a bank customer may challenge the disclosure of documents subpoenaed from that customer's bank."  Feiner v. SEC, No. 12 Misc. 0354, 2012 WL 5511003, at *2 (S.D.N.Y. Nov. 13, 2012) (citing 12 U.S.C. § 3410(e); SEC v. Jerry T. O'Brien, Inc., 467 U.S. 735, 745-46, (1984); Davidov v. SEC, 415 F. Supp. 2d 386, 387 (S.D.N.Y. 2006) ("Section 3410 of the [RFPA] sets forth the sole judicial remedy available to an individual who seeks to oppose disclosure of financial records to a government authority.")).  Under the RFPA, court review of the Movant's challenge to the subpoena is limited.  Id.  "[T]he Court must consider, first, whether there is a demonstrable basis to believe that the SEC is pursuing a legitimate inquiry and, second, whether the SEC has a reasonable belief that the requested documents are relevant to that inquiry."  Id.  "If the court finds that . . . there is a demonstrable reason to believe that the law enforcement inquiry is legitimate and a reasonable belief that the records sought

are relevant to that inquiry, it shall deny the motion . . . ."
12 U.S.C. § 3410(c).

The Movants do not argue that the inquiry is illegitimate nor could they, because the subpoenas have been issued pursuant to a formal order of investigation.  See Feiner, 2012 WL 5511003, at *2 (concluding that "there is a demonstrable reason to believe that the SEC is pursuing a legitimate investigation" because, among other reasons, "the SEC is conducting its investigation pursuant to a formal investigative order.").  This Court already determined in the prior proceeding in which Mr. DePalo sought to quash SEC subpoenas that the SEC had made a prima facie showing that its investigation was pursuing a legitimate purpose, namely the investigation of possible violations of the securities laws.  (Tr. 39.)  Therefore, the sole issue is whether the Citibank records are relevant to the SEC's investigation of Arjent, its officers, directors, employees, partners, subsidiaries, affiliates, and/or other persons or entities.  (Tr. 32.)

In determining relevance in RFPA challenges, district courts in the Second Circuit are guided by the burden shifting framework established in In re SEC Private Investigation/ Application of John Doe re Certain Subpoenas, No. M8 85, 1990 WL 119321 (S.D.N.Y. Aug. 10, 1990) ("In re John Doe").  First, the

5

moving party "must 'show a factual basis' for his [or her] conclusion that the records are irrelevant." In re John Doe, 1990 WL 119321, at *2.  If the moving party satisfies this burden, the government agency is not required "to show that the records are relevant, but rather must show that there is 'a reasonable belief that the records sought are relevant.'" Id.; see also Davidov, 415 F. Supp. 2d at 391.  Each of the Movants has independent relevance arguments that will be addressed in turn.

### 1. Robert DePalo

Robert DePalo argues that his bank statements are not relevant for several reasons.  First, he argues that his bank statements are irrelevant because he was entitled to the portion of the funds he retained from Pangaea.  However, a movant cannot defeat a subpoena by arguing that he has not violated the law. See United States v. Constr. Prods. Research, 73 F.3d 464, 470 (2d Cir. 1996).  Therefore Robert DePalo's representation that no law has been broken is an insufficient basis to quash the subpoena.  The SEC has the right to investigate whether the securities laws have in fact been violated, and whether Mr. DePalo's assertions are correct.

Second, Robert DePalo argues, relying on one case from the Eastern District of Michigan, that because he has admitted that the funds passed through his account, that admission makes his account statements irrelevant to the investigation into Arjent. See Breakey v. Department of Agriculture, 836 F. Supp. 422, 425-27 (E.D. Mich. 1993). Breakey, however, provides no support for Mr. DePalo. In Breakey, the Office of the Inspector General of the United States Department of Agriculture subpoenaed account records of accounts managed by the movant solely because it believed that the movant was illegally putting certain funds into the accounts. Id. at 426-47. Although the movant admitted that he was putting those funds into the accounts, the Government nevertheless sought to subpoena the accounts. Unlike Robert DePalo, who argues the subpoenas should be quashed on grounds of relevance, the Court in Breakey initially held that the investigation was not "legitimate." Id. at 427 ("Because the lone query representing the government's stated purpose of its investigation has been admitted by Movant, the government had not met its burden of showing that its investigation was 'legitimate.'") (emphasis added). Thereafter, the Government submitted additional information in camera that led the Court to reverse itself and hold that the Government was seeking the

information for a legitimate purpose.  Id. at 427.  Therefore the Court denied the motion to quash.  Id.

In this case, the SEC is conducting an investigation into Arjent and related entities.  Contrary to the claims of Robert DePalo, it is not the "lone" inquiry of the SEC whether funds from Pangaea flowed through and were retained in DePalo's personal bank account.  Therefore, unlike the concession in Breakey, DePalo's admission does not end the investigation.  Robert DePalo has not met his burden of showing that the information is not relevant to a legitimate inquiry by the SEC.

Furthermore, the SEC has demonstrated a reasonable belief that Robert DePalo's bank statements are relevant to its legitimate investigation into Arjent.  The SEC has previously submitted affidavits indicating that Robert DePalo may have misappropriated the funds of Arjent customers that were invested in Pangaea and SPK.  (Tr. 32-33; Akhtar Decl., DePalo v. SEC, 12 Misc. 0377, ECF No. 3 ("Akhtar Decl.") ¶ 18).)  Robert DePalo has admitted that funds from Pangaea were transferred into his personal bank account, and then transferred to the account of Arjent UK.  (Tr. 32.)  These sworn statements are sufficient for the SEC to meet its burden.  In re John Doe, 1990 WL 119321, at *2 ("Once a person's connection to apparently illicit conduct has been shown, it is relevant to know whether that person's

bank account contains evidence of such conduct.") The motion to quash the subpoena for Robert DePalo's bank statements is **denied**.

### 2. Gregg Lerman

Gregg Lerman has also moved to quash the SEC subpoena for his bank records. In his affidavit, Lerman states that his bank records are not relevant because SPK had no involvement with Arjent:

> SPK never conducted any private placement, sale, or offering of any securities in the company by or through Arjent LLC. Any such offerings were concluded before I was registered – or had any relationship whatsoever – with Arjent LLC, and Arjent LLC was not involved in any such offering . . . Arjent LLC therefore did not conduct or participate in any private placement, sale, or offering of securities in SPK. The Investigation deals with potential statutory violations by Arjent LLC in offer or sale of securities. Since Arjent LLC never offered or sold any securities in SPK, I cannot see how my personal financial information could therefore be in any way relevant to the investigation.

(Lerman Aff. ¶ 3.) The affidavit makes the requisite factual showing and therefore the burden shifts to the SEC to demonstrate a reasonable belief that the records are relevant to its investigation.

The SEC has met its burden of showing a reasonable belief that Lerman's records are relevant to the Arjent investigation. The SEC has submitted a sworn declaration indicating it has

evidence that Lerman misappropriated proceeds invested into Pangaea and SPK.  (Tr. 32-33; Akhtar Decl. ¶ 18.)  The SEC affidavit indicates that funds from Arjent customers were transferred to entities called Brookville and Veritas, and subsequently transferred to DePalo and Lerman.  (Tr. 32-33; Akhtar Decl. ¶ 18.)  Furthermore, Lerman was a principal of SPK, an entity named in the Amended FOI.  (SEC Mem. at 2; Tr. 31-32.)  Based on these sworn statements, the SEC has demonstrated a reasonable belief that Lerman's bank records are relevant to its investigation into Arjent.  In re John Doe, 1990 WL 119321, at *2.  The motion to quash the Lerman subpoena is **denied**.

### 3. Rosemarie DePalo

The SEC has also subpoenaed the financial records of Robert DePalo's spouse, Rosemarie DePalo.  The Court of Appeals for the Second Circuit has applied "heightened scrutiny" to subpoenas of family members of those under investigation by agencies for wrongdoing.  McVane v. FDIC, 44 F.3d 1127, 1138 (2d Cir. 1995).  At this point, the SEC has not asserted facts sufficient to withstand heightened scrutiny, and therefore the subpoena of Rosemarie DePalo is quashed without prejudice.

"[A]dministrative subpoenas issued pursuant to an agency investigation into corporate wrongdoing, which seek personal

10

records of persons who are not themselves targets of the investigation and whose connection to the investigation consists only of their family ties to corporate participants, must face more exacting scrutiny than similar subpoenas seeking records solely from corporate participants." Id.  In McVane, pursuant to a formal order of investigation into potential wrongdoing by former directors of failed banks, the FDIC issued subpoenas to five directors, which requested, among other things, "[a]ll financial statements of your spouse." Id. at 1131.  The FDIC argued that it needed the subpoenaed financial materials to determine whether the directors had transferred assets to their spouses or family members. Id. at 1138.  The Second Circuit Court of Appeals vacated the subpoenas as applied to the spouses' financial records. Id.  The Court of Appeals explained that the FDIC had not substantiated its need for the materials because the agency had "articulated no grounds for suspecting that any of these Directors . . . has transferred assets to family members" and had made no showing that the agency's goal could not be accomplished through more narrowly drawn subpoenas "limited either to the Directors' financial records, or, if some familial documents were needed, to records of transfers of assets from the Directors." Id. at 1139.  Therefore, under McVane, in order to subpoena financial records from the spouse

11

of a director under investigation, where the spouse is not a target of the investigation and where the spouse's connection to the investigation only consists of family ties to a corporate participant, an agency must (1) articulate grounds for suspecting that the individual under investigation has transferred assets to the spouse and (2) show that the agency's goal could not be accomplished through a more narrowly drawn subpoena.  See id.; cf. FDIC v. Garner, 126 F.3d 1138, 1144 (9th Cir. 1997) (distinguishing McVane because the FDIC introduced evidence of spousal involvement in wrongdoing).  The SEC has succeeded in the former, but produced no evidence in support of the latter.

The SEC has clearly articulated grounds for suspecting that Robert DePalo has transferred assets to his spouse.  In DePalo v. SEC, the SEC provided a sworn declaration to the Court stating that the SEC has documents showing that funds from Arjent customers were transferred to Pangaea, then to DePalo's personal Citibank account, and finally to Rosemarie DePalo. (SEC Mem. at 4 (citing Akhtar Decl. ¶ 18); SEC Mem. at 7.) However, the SEC has not put forward any evidence showing that the information it seeks cannot be obtained through a more narrowly drawn subpoena, or from the subpoena directed at Robert DePalo's bank statements.  See McVane, 44 F.3d at 1138 ("if some

12

familial documents were needed, [the subpoenas could be limited] to records of transfers of assets <u>from</u> the Directors [to the family members].") (emphasis added).

There is the possibility that Rosemarie DePalo's bank records may fall outside the heightened scrutiny of <u>McVane</u> because she is a target or because she was involved in wrongdoing other than having her account used as the repository of funds transferred from her husband.  The SEC points out that Rosemarie DePalo was the sole shareholder and officer of a company named Allied that loaned money to Arjent's holding company.  However, the SEC has not thus far asserted that Rosemarie DePalo is a target of the SEC investigation, explained how her involvement with Allied is relevant to the SEC's investigation, or explained how her personal bank records are relevant to that investigation.  It is of course possible that the SEC could make those showings.  It has simply failed to do so thus far.  Because the SEC has not met its burden under <u>McVane</u> at this time, Rosemarie DePalo's motion to quash is **granted.**  As in <u>McVane</u>, the subpoena is quashed without prejudice to the SEC's redrafting the subpoena or submitting further evidence in support of its enforcement.

13

CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, they are either moot or without merit. For the reasons explained above, the motions of Gregg Lerman and Robert DePalo are **denied**. The motion of Rosemarie DePalo is **granted without prejudice. The Clerk is directed to close all pending motions.**

**SO ORDERED.**

**Dated: New York, New York**
     **March 8, 2013**                      _____/s/_____
                                                **John G. Koeltl**
                                     **United States District Judge**